# REPORTS

## OF

## CASES ARGUED AND DETERMINED,

### JUNE TERM, 1840.

| 1 | 351 |
|---|---|
| 102 | 78 |
| 1 | 351 |
| 116 | 603 |

### CULLUM V. CASEY & CO.

1. The Courts of Chancery, under the new organization, must be opened within the three first days of the commencement of the term, as appointed by the act creating them; and on failure to do so, will stand adjourned to the next Court in course, by operation of law. An appearance will not cure the defect.

2. The rules, regulations, and modes of proceeding, provided by law, for the regulation of suits in Chancery, under the old system, apply to the new organization of Chancery Courts.

3. An allegation that the complainant *did not recollect that the writ was served on him*, and was thereby prevented from appearing, and defending the suit at law, will not give the Court of Chancery jurisdiction after a judgment at law.

Error to the Circuit Court sitting at Mobile.

THIS was a bill in chancery, filed by the plaintiff in error against the defendant in error, in the Chancery Court for the Southern Division, sitting at Mobile.

Cullum v. Casey & Co.

The bill charges, that the complainant, at the instance of Brown & Cawley, agreed to become the first endorser of a bill for four thousand dollars, for their accommodation, to be drawn by them, on a house in New York; and with the express understanding, that it was to be sold to the agent of the Bank of the United States, at Mobile; that the agent of the Bank refused to purchase, of which the complainant had notice, and that his liability on the bill was at an end. The bill further charges, that a few days after the February term, 1838, of Mobile County Court, complainant was informed by the sheriff of of Mobile county, that he had an execution against him, for four thousand seven hundred and two dollars, in favor of D. Casey & Co.; that he was greatly surprised, and on examination, discovered that the judgment was rendered on the bill aforesaid, by default; that the writ was returned executed on him by the sheriff, in May, 1837: and charges that he has no recollection that the writ was served on him; that the claim is unjust; and that he could have defeated the action, if he had known that the suit was pending; and charges fraud and combination, between Brown & Cauley, D. Casey & Co. and others, who are made defendants. The bill prays a perpetual injunction against the judgment, or that a new trial at law be granted.

No answer was filed.

On the 11th November, 1839, the following entry was made: " The Chancellor, having failed this day, to meet and hold the Court, the same was adjourned till to-morrow morning, nine o'clock." On the 12th, a similar entry was made; and on the 13th, the following entry appears: " The Chancellor having failed this day, to meet and hold the Court, agreeably to adjournment, and continued open until four o'clock this day; and the Chancellor still failing to appear and hold the Court, the same was by the sheriff regularly adjourned, until the court in course. Signed by the Register."

On the 19th of November, 1839, the Chancellor appeared, opened Court, and the following entries were made: " The above entries ordered to be stricken out, by the Chancellor, on

Cullum v. Casey & Co.

Tuesday, the 19th November, 1839; and on the 27th day of November, on motion of the defendant, the complainant's bill was dismissed, for want of equity.

From this decree, this writ of error is prosecuted by the complainant, who assigns for error—

1st. The court erred, in dismissing the bill, after the cause and the court had been regularly continued, until the next term:

2d. The court erred, in hearing the motion, at an irregular term; and at a time not fixed by law, for the hearing of any cause:

3d. The Chancellor erred, in hearing the motion during vacation:

4th. The court erred in dismissing the bill.

STEWART, for the complainant.
LESSESNE, for the respondents.

ORMOND, J.—The principal question in this case, viz: whether the decree was made at a proper term of the court, is one of considerable importance, from the number of cases depending on it.

The act to organize and establish separate Courts of Chancery, passed January 26th, 1839, provides, that the Courts of Chancery shall be held twice a year, in each district: "In the city of Mobile, on the second Mondays of May and November, in each and every year, and continue in session three weeks, unless the business be sooner disposed of."

Previous to the passage of this law, the Judges of the Circuit Court were vested with, and exercised chancery jurisdiction; and it was provided by law, that "the said courts shall have and exercise, all the power, authority, and jurisdiction, incident to courts of chancery; and may ordain and establish, all necessary rules for the orderly conducting of business in equity, and for hearing and taking orders on interlocutry matters, in vacation. The Judges of the superior courts of law and equity, shall have power in vacation, to examine all answers to bills in chancery, and if any defendant or defendants, have been held to bail, any

45

Judge, on application, may, and he is hereby authorized, to reduce or discharge, such bail taken as aforesaid."

The act for the establishment of separate Chancery Courts, provides "that said chancellors should be vested with, and exercise all the powers, and perform all the duties, which are customary for chancellors to perform;" but provides no rules or regulations for their government; and it is plain that it was not intended to vest them with any greater power, or to give them a larger jurisdiction, than appertained to the office when its duties were performed by the common law judges; and as they could not do any act in vacation, not authorized by the statute conferring their powers, so neither can the chancellors under the present system. The chancellor cannot sit before, or after the time limited by law: all the intervening period is vacation.

To prevent parties from being unnecessarily delayed attending court, in ignorance when the court would commence its session, it was provided by law, that "when any circuit judge shall fail to attend on the first day of the term, the business shall stand adjourned to the second day; and if the judge shall fail to attend on the second day, the business shall stand adjourned until the third day, and if the judge does not attend before the hour of three o'clock, on the evening of the third day, it shall be the duty of the sheriff, to adjourn all suits, causes, and prosecutions, therein depending, to the next succeeding term of the circuit court; and the clerk of said court, shall enter on his docket, a continuance of all such suits and causes, and shall bind over all witnesses on behalf of the State to appear at the next term of the said court, unless previously bound over." (Aik. Dig. 244.)

The Chancellor having failed to attend the Chancery Court at Mobile, by the evening of the third day of the term, the sheriff adjourned the court, until the court in course. It has been contended by the counsel for the defendant in error, that this law does not apply to the separate chancery court; but we are satisfied that it does apply, and that the court was properly adjourned to the court in course. It was not the intention of the Legislature, to make any further innovation upon our equity

Cullum v. Casey & Co.

system than to provide for a chancellor, distinct from the common law judges, as is clear from the law itself; and as the act just cited, applied as well to suits in chancery as at law, it is a part of the general system, by which the separate chancery court must be governed.

It is said, that a court of chancery is always open. If by that expression is meant, that it has not distinct terms, to which all process is returnable, and that a cause may be brought to trial, in vacation, it is not true. Even in England, where the Courts of Chancery for the whole Kingdom, sit in one place, they have distinct terms, to which process is returnable. There, causes are set for trial by the parties; with us, by statute; and in neither is a final hearing had in vacation. It would be a most intolerable grievance, to hold, that the commencement of the term should be in suspense, until the last moment of the term, which, in the courts held at Huntsville and Eutaw, is without limitation. Such was certainly not the intention of the Legislature; for a demonstration of which, it is only necessary to add, that the mode of proceeding in equity, as pointed out by the acts of the Legislature, (Aik. Dig. 287,) is utterly inconsistent with any such idea. We are therefore of opinion, that the final decree in this case, was made at a time, when, from the adjournment of the court, there was no authority for the Chancellor to sit; and that it is therefore void.

It is contended by the counsel for the defendant in error, that admitting the law to be as stated, yet the plaintiff in error, by appearing in court, has waived the objection, and cannot raise it here.

It is true, that in general, a party who submits his case to the judgment of a court, cannot afterwards question its right to adjudicate the subject matter; but that principle has no application to a case where a court assumes to act in a particular cause, when it had no power to sit in judgment in any cause. In such a case, its acts are not judicial, nor can they be enforced by the sanctions of the law.

This case has, however, been argued on the merits, on a mo-

tion to dismiss the bill for want of equity, and it is therefore proper, to enable the Chancellor to make a final disposition of the cause, that an opinion should be expressed on the equity of the case.

The substance of the bill is, that the plaintiff in error was sued at law, as the endorser of a bill of exchange, and judgment by default obtained against him, for want of an appearance: That he made no defence, because he did not know that such a suit was depending; and *has no recollection that the writ,* which is returned executed by the sheriff, *was ever served on him:* That he could have prevented a recovery, by the plaintiff below.

A great many circumstances and facts, are detailed in the bill, to prove that the defendants in error are prosecuting an unjust demand, which we decline the examination of, because no sufficient reason is shown for not defending the cause at law. To entertain a suit in equity, after a judgment at law, because a *"party does not recollect that the writ was served on him,"* would be to break down at once, all distinction between courts of law, and equity; to encourage negligence and inattention in the prosecution of suits at law; and to procrastinate a recovery at pleasure, by resorting to a court of equity.

The principle has been repeatedly settled in this Court, and is thus concisely stated in the case of French v. Garner, *et al.* (7 Porter 552.) "It is a settled principle, that a court of equity will not interfere after a judgment at law, unless the party can impeach the judgment by facts, or on grounds of which he could not have availed himself, or was prevented from doing so, by fraud or accident, or the act of the opposite party, unmixed with negligence or fault, on his part." (See also, the cases there cited; and Mock v. Cundiff, 6 Porter 24: McGrew v. The Tombeckbee Bank; 5 Porter 547.)

These principles are decisive of this case. No other reason is given for not defending the suit at law, but the forgetfulness of the party; for we do not consider it uncharitable to render the allegation of the bill, *that he does not recollect,* by its true meaning, that he *forgot* the service of the writ. Taken in any sense, how-

ever, he does not show that the opposite party had any agency in producing this result, or that his conduct is unmixed with fault or negligence on his part: and he must abide by the consequences of a rule, which the best interests of society require should be adhered to.

Let the decree be reversed, and the cause remanded for further proceedings.